1   Brooks R. Brown (CA Bar #250724)
    GOODWIN PROCTER LLP
2   10250 Constellation Boulevard
    21st Floor
3   Los Angeles, CA 90067-6221
    Tel.:  310.788.5100
4   Fax:  310.286.0992
    bbrown@goodwinprocter.com
5
    James W. McGarry (*pro hac vice*)
6   Mark Tyler Knights (*pro hac vice*)
    GOODWIN PROCTER LLP
7   53 State Street
    Boston, Massachusetts  02109
8   Tel.:  617.570.1000
    Fax:  617.523.1231
9   jmcgarry@goodwinprocter.com
    mknights@goodwinprocter.com
10
    Attorneys for Bank of America, N.A. and BAC
11  Home Loans Servicing, LP

12                  **UNITED STATES DISTRICT COURT**

13                 **NORTHERN DISTRICT OF CALIFORNIA**

14                      **SAN FRANCISCO DIVISION**

15

16  BRITTA BREWER; STACEY MADAMBA;        Case No. 3:10-CV-01884-JSW
    TARRY and NANCY MILLER, husband and
17  wife, on behalf of themselves and all others   **DEFENDANTS' MOTION TO DISMISS**
    similarly situated,                            **CLASS ACTION COMPLAINT IN PART**

18             Plaintiffs,                 Date:        October 1, 2010
                                           Time:        9:00 a.m.
19        v.                               Courtroom:   11, 19th Floor
                                           Judge:       Hon. Jeffrey S. White
20  BANK OF AMERICA, N.A. and BAC HOME
    LOANS SERVICING, LP,

21             Defendants.

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ................................................................................iv

SUMMARY OF ARGUMENT ........................................................................................iv

STATEMENT OF THE ISSUES TO BE DECIDED .............................................. - 1 -

INTRODUCTION.................................................................................................... - 1 -

FACTUAL BACKGROUND ................................................................................... - 2 -

FACTUAL BACKGROUND ................................................................................... - 2 -

    A.    Plaintiffs' Applications for Loan Modifications ............................... - 2 -

        1.    Britta Brewer ..................................................................... - 3 -

        2.    Stacey Madamba ................................................................ - 4 -

        3.    Tarry and Nancy Miller...................................................... - 4 -

    B.    The Home Affordable Modification Program .................................... - 5 -

LEGAL STANDARD .............................................................................................. - 6 -

ARGUMENT ........................................................................................................... - 7 -

    A.    Plaintiffs Are Not Third Party Beneficiaries of BANA's Servicer Participation Agreement with the U.S. Treasury. ............................. - 7 -

    B.    Plaintiff Britta Brewer Is Not Entitled To Relief. ............................. - 11 -

        1.    Brewer's Alleged Oral Agreement Is Unenforceable. ......................... - 11 -

        2.    Brewer Has Suffered No Cognizable Damages. ................................. - 12 -

    C.    Plaintiff Stacey Madamba Is Not Entitled to Relief....................... - 12 -

        1.    The Conditions Precedent to Madamba's Agreement Were Not Satisfied............................................................ - 12 -

        2.    Madamba Has Suffered No Cognizable Damages. .............................. - 13 -

    B.    Brewer's and Madamba's Section 17200 Claims Must Be Dismissed. ............ - 14 -

CONCLUSION ....................................................................................................... - 15 -

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Advanced Choices, Inc. v. Department of Health Services,*
   182 Cal. App. 4th 1661, 107 Cal. Rptr. 3d 470 (2010) .......................................................... 13

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937 (2009) ................................................................................................... 6, 15

*Balistreri v. Pacifica Police Dept.,*
   901 F.2d 696 (9th Cir. 1988) ................................................................................................. 7

*Bell Atl. Corp. v. Twombly,*
   550 U.S. 544 (2007) ..................................................................................................... 6, 14

*Benito v. IndyMac Mortgage Servs.,*
   No. 2:09-CV-001218, 2010 WL 2130648 (D. Nev. May 21, 2010) ....................................... 7

*Berryman v. Merit Property Management, Inc.,*
   152 Cal. App. 4th 1544 (2007) ............................................................................................. 15

*Bhari Information Tech. Sys. Pvt., Ltd. v. Allied Boston Bank Inc.,*
   No. C 05-01223 SI, 2005 WL 3481473 (N.D. Cal. Dec. 20, 2005) ....................................... 13

*Borrego v. BMG U.S. Latin,*
   92 Fed. Appx. 572 (9th Cir. 2004) ........................................................................................ 13

*Branch v. Tunnell,*
   14 F.3d 449 (9th Cir. 1994) ................................................................................................... 3

*Burtzos v. Countrywide Home Loans,*
   No. 09-CV-2027W, 2010 WL 2196068 (S.D. Cal. June 1, 2010) .......................................... 7

*Chabner v. United of Omaha Life Ins. Co.,*
   225 F.3d 1042 (9th Cir. 2000) ............................................................................................... 15

*Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.,*
   558 F.2d 948 (9th Cir. 1977) ................................................................................................. 9

*County of Santa Clara v. Astra USA, Inc.,*
   588 F.3d 1237 (9th Cir. 2009) .......................................................................................... 8, 10

*Escobedo v. Countrywide Home Loans, Inc.,*
   No. 09-cv-1557, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009) ................................... v, 1, 7, 9

*Express, LLC v. Fetish Group, Inc.,*
   464 F. Supp. 2d 965 (C.D. Cal. 2006) .......................................................................... v, 13, 14

i

*Hoffman v. Bank of America, N.A.*,
    No. C 10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010) .................................. passim

*Justo v. Indymac Bancorp*,
    No. SACV 09-1116 JVS, 2010 WL 623715 (C.D. Cal. Feb. 19, 2010) ............................ v, 11

*Klamath Water Users Protective Ass'n v. Patterson*,
    204 F.3d 1206 (9th Cir. 1999) ........................................................................................ 8, 9

*Lucero v. Countrywide Bank N.A.*,
    No. 09cv1742, 2010 WL 1880649 (S.D. Cal. May 10, 2010) ............................................ 7

*Marks v. Bank of America, N.A.*,
    No. 03:10-cv-08039, 2010 WL 2572988 (D. Ariz. June 22, 2010) ............................ v, 1, 7, 9

*Northwest Pipe Co. v. Travelers Indem. Co. of Conn.*,
    No. C-02-04189JF, 2003 WL 24027882 (N.D. Cal. Feb. 12, 2003)................................. v, 13

*Peterson v. Cellco Partnership*,
    164 Cal. App. 4th 1583 (2008) ....................................................................................... 14

*Reyes v. Saxon Mortgage Services, Inc.*,
    No. 09-cv-1366, 2009 WL 3738177 (S.D. Cal. Nov. 5, 2009) ......................................... 8

*Salute v. Stratford Greens Garden Apartments*,
    136 F.3d 293 (2d Cir. 1998) ........................................................................................... 10

*Secrest v. Security Nat'l Mortg. Loan Trust 2002-2*,
    167 Cal. App. 4th 544, 84 Cal. Rptr. 3d 275 (2008) ................................................... v, 11

*Siam Numhong Products Co., Ltd. v. Eastimpex*,
    866 F.Supp. 445 (N.D. Cal. 1994) ................................................................................ 12

*Simmons v. Countrywide Home Loans, Inc.*,
    No. 09-cv-1245, 2010 WL 2635220 (S.D. Cal. June 29, 2010)............................................ 7

*Simon v. Bank of America, N.A.*,
    No. 10-cv-00300, 2010 WL 2609436 (D. Nev. June 23, 2010)............................................ 7

*Smith v. Simmons*,
    No. 1:05-CV-01187, 2007 WL 2815033 (E.D. Cal. Sept. 25, 2007)................................. v, 13

*Union Pacific R. Co. v. Cedar Rapids and Iowa City R. Co.*,
    477 F. Supp. 2d 980 (N.D. Iowa 2007) ......................................................................... 13

*Van Buskirk v. Cable News Network, Inc.*
    284 F.3d 977 (9th Cir. 2002)............................................................................................. 3

*Villa v. Wells Fargo Bank, N.A.*,
    No. 10-cv-81, 2010 WL 935680 (S.D. Cal. March 15, 2010)........................................ 7, 8, 10

ii

*Zendejas v. GMAC Wholesale Mortgage Corp.*,
     No. 10-CV-00184, 2010 WL 2629899 (E.D. Cal. June 29, 2010)............................................7

**STATUTES**

Cal. Bus. & Prof. Code § 17204...................................................................................... 14

California Business & Professions Code § 17200 ................................................................. passim

**OTHER AUTHORITIES**

Fed. R. Civ. P. 12(b)(6)................................................................................................... 6

Local Rule 7-4(a)(3)....................................................................................................... 1

## NOTICE OF MOTION AND MOTION

TO: BRITTA BREWER, STACEY MADAMBA, AND TARRY AND NANCY MILLER (COLLECTIVELY, "PLAINTIFFS") AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on October 1, 2010, at 9:00 a.m. in the Courtroom of the Honorable Jeffrey S. White, located at 450 Golden Gate Avenue, San Francisco, California 94102, Defendants Bank of America, N.A. ("BANA") and BAC Home Loans Servicing, LP ("BAC") (collectively, "Defendants") by and through their counsel, will move and hereby do move for an order dismissing Plaintiffs' Complaint in part under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.

## SUMMARY OF ARGUMENT

Plaintiffs' attempt to enforce the federal government's Home Affordable Modification Program ("HAMP") against Defendants must fail. Though Plaintiffs claim that Defendants were required to give them permanent mortgage loan modifications under HAMP and have failed to do so, the law is already well-established that there is no private right of action under HAMP and that borrowers do not have standing to enforce HAMP Servicer Participation Agreements between loan servicers and the U.S. Treasury Department. *See, e.g.*, *Hoffman v. Bank of America, N.A.*, No. C 10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010); *Marks v. Bank of America, N.A.*, No. 03:10-cv-08039, 2010 WL 2572988 (D. Ariz. June 22, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009).

Moreover, it is clear from Plaintiffs' individual circumstances that they are not entitled to relief under their own alleged agreements with Defendants. Plaintiff Britta Brewer's claim that she can enforce Defendants' alleged oral agreement to modify her loan pursuant to HAMP must fail because it is contrary to both the terms of her mortgage loan agreement and the statute of frauds. *Justo v. Indymac Bancorp*, No. SACV 09-1116 JVS, 2010 WL 623715 (C.D. Cal. Feb. 19, 2010); *Secrest v. Security Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 84 Cal. Rptr. 3d 275 (2008). Plaintiff Stacey Madamba, who has a written modification agreement, has nevertheless failed to plead any cognizable breach of that agreement because she has not alleged that the conditions precedent to the modification were satisfied. *See Smith v. Simmons*, No. 1:05-

CV-01187, 2007 WL 2815033 (E.D. Cal. Sept. 25, 2007); *Northwest Pipe Co. v. Travelers Indem. Co. of Conn.*, No. C-02-04189JF, 2003 WL 24027882 (N.D. Cal. Feb. 12, 2003).  And neither Brewer nor Madamba is entitled to recovery because neither has successfully alleged that they suffered any damages as a result of Defendants' supposed misconduct.  Brewer's and Madamba's failure to plead any damages must also result in the dismissal of their claim under California Business & Professions Code § 17200, as damages are a prerequisite to standing to pursue a claim under that statute.  *Express, LLC v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 979 (C.D. Cal. 2006).

## STATEMENT OF THE ISSUES TO BE DECIDED

Pursuant to Civil Local Rule 7-4(a)(3), Defendants set forth the following statement of issues to be decided:

1.     Whether the Complaint states a claim against Defendants upon which relief can be granted where Plaintiffs seek to recover under a contract to which they are not a party, and where the contract in question disavows any intention to benefit borrowers such as Plaintiffs?

2.     Whether the Complaint states a claim against Defendants upon which relief can be granted where Plaintiff Britta Brewer has failed to allege the existence of a valid, enforceable contract or any cognizable damages that she suffered as a result of Defendants' alleged conduct?

3.     Whether the Complaint states a claim against Defendants upon which relief can be granted where Plaintiff Stacey Madamba has failed to allege that the conditions precedent in her loan modification agreement were satisfied, or to identify any cognizable damages that she suffered as a result of Defendants' alleged conduct?

## INTRODUCTION

Plaintiffs in this case seek to enforce the federal government's Home Affordable Modification Program ("HAMP") against Defendants.  The factual circumstances in which each of the Plaintiffs find themselves vary widely, but each claims that Defendants were required to give him or her a permanent mortgage loan modification under HAMP and have thus far failed to do so.  There are no allegations that Plaintiffs' loan terms were unfair, or that the Plaintiffs did not understand the terms of their loans, or that there was anything wrong with the loans themselves.  But because of changes in Plaintiffs' personal circumstances, each of them found themselves unable to make their monthly mortgage loan payments and sought a loan modification from BAC.

The law is already well-established that there is no private right of action under HAMP.  Recognizing as much, Plaintiffs instead assert they are entitled to permanent loan modifications under HAMP because they are intended third-party beneficiaries of a Servicer Participation Agreement between BANA and the U.S. Treasury Department.  This claim must fail, however, as it is also clear that Plaintiffs are not third-party beneficiaries under HAMP, as virtually every district court examining the issue has concluded, including many in this Circuit.  *See, e.g.*,

1

*Hoffman v. Bank of America, N.A.*, No. C 10-2171 SI, 2010 WL 2635773 (N.D. Cal. June 30, 2010); *Marks v. Bank of America, N.A.*, No. 03:10-cv-08039, 2010 WL 2572988 (D. Ariz. June 22, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618 (S.D. Cal. Dec. 15, 2009).

Moreover, Plaintiffs' individual circumstances demonstrate that they are not entitled to relief under their own alleged agreements with Defendants. Britta Brewer, for example, claims that Defendants orally agreed to modify her loan pursuant to HAMP. But the terms of Brewer's mortgage loan agreement provide that she could only be released from her loan obligations *in writing*, and an agreement to modify a mortgage loan must be in writing to satisfy the statute of frauds. Plaintiff Stacey Madamba, who (unlike Brewer) alleges that she actually entered into a written agreement with Defendants, has nevertheless failed to plead any cognizable breach of that agreement. And neither Brewer nor Madamba is entitled to recovery because neither has successfully alleged that they suffered any damages as a result of Defendants' supposed misconduct – nor can they, as all Defendants did was permit them to make monthly payments in an amount far less than they were otherwise obligated to make under their loan agreements. Brewer's and Madamba's failure to plead any damages must also result in the dismissal of their claim under California Business & Professions Code § 17200, as damages are a prerequisite to standing to pursue a claim under that statute.

For these reasons, and for the reasons set forth below, Plaintiffs cannot state a claim for relief under any of the myriad theories they advance. The Complaint should be dismissed.

## FACTUAL BACKGROUND[1]

### A.   *Plaintiffs' Applications for Loan Modifications*

Plaintiffs Britta Brewer, Stacey Madamba, and Tarry and Nancy Miller are California homeowners whose mortgage loans are serviced by BAC,[2] and who allege that although they

complied with the requirements under HAMP, Defendants failed to permanently modify their loans or to honor the terms of a permanent HAMP modification.  Compl. ¶¶ 11-12, 117.

        1.    <u>Britta Brewer</u>

Brewer obtained a mortgage loan from another lender to purchase her home in 2004, and BAC later began servicing the loan.  Compl. ¶ 62.  The terms of the deed of trust securing her loan provide that "Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing."  *See* Exhibit A to Declaration of Mark Tyler Knights ("Knights Decl.") at 9 (¶ 13).[3]  Under the terms of her loan, Brewer was obligated to make monthly payments of $4,164.36.  Compl. ¶ 62.

In the fall of 2008, Brewer fell behind on her loan payments, and in early 2009, sought assistance in obtaining a loan modification from Defendants.  *Id.* at ¶¶ 63-64.  Brewer claims that she spoke with a representative of Defendants who told her to submit certain documentation in furtherance of the modification process, and that she did so on September 16, 2009.  *Id.* at ¶¶ 65, 67.  Brewer claims that she later spoke with a representative of Defendants who told her that her temporary modification had been approved, and that if she submitted monthly payments of $1977 for three months, she would be eligible for a permanent modification under HAMP.  *Id.* at ¶ 69.  Brewer claims that she made timely payments of $1977 to BAC for November, December, and January 2010, but that in January 2010 BAC sent Brewer a Notice of Intent to Accelerate her loan.

---

[1] The factual allegations recited herein are taken from Plaintiffs' Complaint and are intended only to aid in the Court's resolution of this motion.  By including these allegations in this memorandum, Defendants do not intend to admit them and reserve their right to challenge them at a later date should the need arise.

[2] In their Complaint, Plaintiffs refer to BANA and BAC collectively as "Bank of America."  *See* Complaint ¶¶ 12, 20.  It is therefore unclear which of Defendants – BANA or BAC, or both – supposedly undertook the acts alleged.  Defendants believe that the only proper Defendant to this lawsuit is BAC, as BANA had no involvement in the servicing of Plaintiffs' loan.  Because, however, the Complaint fails to state a cause of action against either Defendant, Defendants reserve for another day any argument as to the propriety of including BANA in the Complaint.

[3] Documents referenced in a complaint can be considered in ruling on a motion to dismiss without converting the motion to a motion for summary judgment.  *See Branch v. Tunnell*, 14 F.3d 449, 453-454 (9th Cir. 1994) (overruled on other grounds); *Van Buskirk v. Cable News Network, Inc.* 284 F.3d 977, 980 (9th Cir. 2002).

*Id.* at ¶¶ 71, 73. She alleges that she contacted BAC, but the representative had no knowledge of a Temporary Payment Plan for Brewer and told her that she was not eligible to receive a modification.  *Id.*  To this date, Brewer has not received a loan modification agreement under HAMP, although she remains in her home.  *Id.* at ¶ 74.

        2.   <u>Stacey Madamba</u>

      Madamba purchased her home with a mortgage loan in 2007. *Id.* at ¶ 77.  At the end of 2008, she began experiencing financial hardship, and in October 2009 attended the "NACA Dream Event," where she submitted an application for a loan modification to a representative of Defendants. *Id.* at ¶¶ 78-80.  That representative allegedly informed Madamba that she had provided all of the required documentation for a modification and that she was approved for a loan modification with BAC.  *Id.* at ¶ 80.  Madamba received and signed a Terms and Conditions Agreement from Defendants on November 17, 2009.  *Id.* at ¶¶ 82, 85.  Under the Terms and Conditions Agreement, Madamba's monthly payments on her loan were reduced from $2,517.18 to $1,591.23.  *Id.* ¶¶ 77, 83. Madamba then made loan payments to Defendants in a substantially reduced amount for the months of February through May of 2010.  *Id.* at ¶¶ 88-89.  Madamba alleges that she received a notice from BAC on March 22, 2010 that her modification had been rejected and was told conflicting information about her modification by several representatives of Defendants.  *Id.* at ¶¶ 90-91.  Madamba claims that to this date, Defendants have not given her a permanent loan modification agreement, although she currently remains in her home.  *Id.* at ¶ 92.

        3.   <u>Tarry and Nancy Miller</u>

      In early 2009, the Millers became delinquent on their mortgage loan payments and sought a loan modification from Defendants.  *Id.* at ¶¶ 96-97.  They allege that they received a HAMP Trial Period Plan in September 2009, signed the document, and returned it to Defendants. *Id.* at ¶¶ 100-101.  The Millers claim that in December 2009, they received a permanent HAMP modification agreement, which they signed and returned with the corresponding loan payment.  *Id.* at ¶¶ 103-105.  The Millers allege that on March 14, 2010, they received a notice of trustee sale asserting that they were in default and called Defendants to stop the foreclosure, but allege that representatives of Defendants indicated they did not receive their payments.  *Id.* at ¶¶ 107-108.

1    The Millers assert that they received another letter from BAC in June 2010 that their loan was in

2    foreclosure. *Id.* at ¶ 112.  The Millers allege that to this date, BAC has not honored their loan

3    modification agreement, although they currently remain in their home.  *Id.* at ¶ 113.

4    **B.      *The Home Affordable Modification Program***

5            Because Plaintiffs allege that they were entitled to loan modifications under the federal

6    government's Home Affordable Modification Program ("HAMP"), a brief description of HAMP

7    may be useful.  In early 2009, the U.S. Treasury announced a national modification program

8    intended to help 3 to 4 million at-risk homeowners avoid defaulting on their mortgage loans by

9    reducing monthly payments.  Complaint, Ex. 2 at 1 (HAMP Supplemental Directive 09-01).  On

10   March 4, 2009, the government published detailed program guidelines for HAMP, which it then

11   supplemented on April 6, 2009.  *Id.*  Under the guidelines, borrowers who meet certain criteria

12   may be eligible to have their loans modified.  *Id.* at 2.

13           All servicers of loans that are owned or guaranteed by Fannie Mae or Freddie Mac ("GSE

14   loans") must participate in the GSE versions of HAMP as to those loans.  Participation in HAMP

15   is voluntary for servicers as to non-GSE loans.  Compl., Ex. 2 at 2.  A servicer that chooses to

16   participate in HAMP must execute a Servicer Participation Agreement "with Fannie Mae in its

17   capacity as financial agent for the United State," *id.*, and Bank of America, N.A. did so.  Compl.,

18   ¶¶ 36-37; *see* Compl., Ex. 1.  Since its inception, there have been numerous and substantial

19   changes to HAMP, which has been a constantly evolving new federal program.  In the past

20   fourteen months, Treasury has issued thirteen different supplemental directives and various other

21   documents providing guidance on HAMP, and Fannie Mae and Freddie Mac have each separately

22   issued multiple different bulletins or directives.[4]

23

24   [4]      *See* Home Affordable Modification Program Servicer Documents, *at*
25   https://www.hmpadmin.com/portal/programs/hamp/servicer.html (providing links to HAMP
     supplemental directives and other documentation for non-GSE loans) (last visited July 26, 2010);
26   https://www.efanniemae.com/sf/mha/mhamod/ (providing links to Fannie Mae Servicing Guide
     Announcements and other directives for implementing HAMP for Fannie Mae loans) (last visited
27   July 26, 2010); http://www.freddiemac.com/singlefamily/service/mha_modification.html
     (providing links to Freddie Mac Seller/Servicer Guide Bulletins and other directives for
28   implementing HAMP for Freddie Mac loans) (last visited July 26, 2010).

Not all mortgage loans are eligible for HAMP, and a participating servicer is not required to modify every HAMP-eligible loan. If borrower eligibility is satisfied, the servicer is obligated *to consider* the borrower for a HAMP modification, assuming it is not precluded from doing so by its other contractual arrangements or investor requirements. Compl., Ex. 2 at 1. Using the borrower's income information, a participating servicer will follow a series of steps (known as the "waterfall") in an effort to adjust the borrower's monthly mortgage payment to 31% of a borrower's total pre-tax monthly income. *Id.* at 8-10. Prior to June 1, 2010, servicers could initially consider a borrower's income, and place the borrower into a Trial Period Plan ("TPP") under HAMP based only on the borrower's "verbal" representation of that income. *Id.* at 5. Unsurprisingly, this process sometimes resulted in borrowers being ineligible for HAMP when their income was later verified. *Id.* at 17-18 (borrower must meet all HAMP conditions to be placed in permanent modification). If application of the waterfall produces an affordable payment, the servicer also subjects the loan to a Net Present Value ("NPV") test. *Id.* at 4-5. If the NPV test produces a "negative" result (meaning that losses from foreclosure are less than losses from modification), the servicer is not obligated to modify. *Id.*

If the borrower returns the TPP, together with documents necessary to verify his or her income and eligibility for a HAMP modification (the income information must be 90 days or less dated as of the time of determining eligibility), and makes all TPP payments, the servicer will analyze the request for a permanent modification. *Id.* at 5-6. A borrower may receive a permanent HAMP modification only if he or she submits all the necessary documentation, is determined to be HAMP-eligible (including that all HAMP requirements continue to be met – *e.g.*, income is verified and qualifies, NPV is positive, the existing mortgage payment exceeds 31% of pre-tax income and the modified payment can be reduced to 31%), and makes timely payments. *Id.* at 15, 18.

## **LEGAL STANDARD**

A complaint, or any cause of action alleged therein, must be dismissed when it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). This standard is met where a complaint fails to allege sufficient facts which, if true, would provide adequate grounds to entitle a

DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:10-CV-01884-JSW

plaintiff to relief.  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554-55 (2007).  However, a complaint containing mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action" does not state a claim.  *Id.*  Rather, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  *Id.* (citations and emphasis omitted).  Where the complaint lacks a "cognizable legal theory" or facts that are sufficient to support a cognizable legal theory, it must be dismissed.  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).

## ARGUMENT

A.      ***Plaintiffs Are Not Third-Party Beneficiaries of BANA's Servicer Participation Agreement with the U.S. Treasury.***

Count I of Plaintiffs' Complaint purports to state claims for breach of contract and breach of the duty of good faith and fair dealing.  As a basis for these claims, Plaintiffs assert that they are among the intended beneficiaries of a Servicer Participation Agreement ("SPA") entered into between BANA and the Treasury (and attached to the Complaint as Exhibit 1), and that Defendants breached their contractual duties under that SPA "by failing to provide eligible borrowers with the opportunity to accept permanent loan modifications and by wrongfully collecting introductory payments."  Complaint ¶¶ 129-131.

Plaintiffs' third-party beneficiary claim fails as a matter of law.  In the last eight months, no fewer than ten Federal District Courts within the Ninth Circuit alone have dismissed lawsuits based on the identical legal theory Plaintiffs advance here – that defaulting borrowers are entitled to recover under an SPA between the Treasury and a loan servicer.  *See Hoffman v. Bank of America, N.A.*, No. C 10-2171 SI, 2010 WL 2635773, *3-5 (N.D. Cal. June 30, 2010); *Zendejas v. GMAC Wholesale Mortgage Corp.*, No. 10-CV-00184, 2010 WL 2629899, *3-4 (E.D. Cal. June 29, 2010); *Simmons v. Countrywide Home Loans, Inc.*, No. 09-cv-1245, 2010 WL 2635220, *2-5 (S.D. Cal. June 29, 2010); *Simon v. Bank of America, N.A.*, No. 10-cv-00300, 2010 WL 2609436, *10 (D. Nev. June 23, 2010); *Marks v. Bank of America, N.A.*, No. 03:10-cv-08039, 2010 WL 2572988, *2-5 (D. Ariz. June 22, 2010); *Burtzos v. Countrywide Home Loans*, No. 09-CV-2027W,

2010 WL 2196068, *2 (S.D. Cal. June 1, 2010); *Benito v. IndyMac Mortgage Servs.*, No. 2:09-CV-001218, 2010 WL 2130648, *7-8 (D. Nev. May 21, 2010); *Lucero v. Countrywide Bank N.A.*, No. 09cv1742, 2010 WL 1880649, *3-4 (S.D. Cal. May 10, 2010); *Villa v. Wells Fargo Bank, N.A.*, No. 10-cv-81, 2010 WL 935680, *2-3 (S.D. Cal. March 15, 2010); *Escobedo v. Countrywide Home Loans, Inc.*, No. 09-cv-1557, 2009 WL 4981618, *1-2 (S.D. Cal. Dec. 15, 2009).[5]

That multiple courts have rejected Plaintiffs' position is unsurprising. As the Ninth Circuit explained in *County of Santa Clara v. Astra USA, Inc.*, 588 F.3d 1237 (9th Cir. 2009):

> Demonstrating third-party beneficiary status in the context of a government contract is a comparatively difficult task. We have explained that parties that benefit from a government contract are generally assumed to be incidental beneficiaries, rather than intended ones, and so may not enforce the contract absent a clear intent to the contrary. *This "clear intent" hurdle is not satisfied by a contract's recitation of interested constituencies, vague, horatory pronouncements, explicit reference to a third party, or even a showing that the contract operates to the third parties' benefit and was entered into with them in mind.* Rather, we examine the precise language of the contract for a "clear intent" to rebut the presumption that the third parties are merely incidental beneficiaries.

*Id.* at 1244 (emphasis added). As Judge Illston recognized in *Hoffman*, 2010 WL 2635773 at *3-5, and as the other district courts noted above have also found, Plaintiffs are incapable of making the showing necessary to get over the "clear intent hurdle" and to rebut the strong presumption that they are merely incidental beneficiaries of the SPA. Rather than evincing a clear intent to rebut the presumption, the SPA, in fact, evinces a clear intent to do just the contrary, and to limit its enforcement to the parties who signed it.

In determining whether Bank of America and the Treasury intended the SPA to benefit borrowers, this Court need go no further than § 11E of the SPA, which provides that the SPA "shall inure to the benefit of and be binding upon the parties to the Agreement and their permitted

---

[5] Only a single court has concluded that private individuals may have a third-party beneficiary claim for breach of contract under a SPA. *See Reyes v. Saxon Mortgage Services, Inc.*, No. 09-cv-1366, 2009 WL 3738177, *1-2 (S.D. Cal. Nov. 5, 2009). Defendants respectfully submit, however, as numerous other courts have observed, that the rudimentary analysis in that case, which examined neither the language of the SPA at issue nor Ninth Circuit law regarding third-party beneficiary claims, holds little persuasive value when compared to the more thorough, and subsequent, analyses in the cases cited above. Indeed, the judge who decided *Reyes* has since reached the opposite conclusion in another matter. See *Villa*, 2010 WL 935680 at *2-3.

1  successors-in-interest."  Complaint, Exh. 1 at 10.  In *Klamath Water Users Protective Ass'n v.*

2  *Patterson*, 204 F.3d 1206, 1212 (9th Cir. 1999), the Ninth Circuit rejected an intended beneficiary

3  argument based on very similar contract language:  "This contract binds and inures to the benefit

4  of the parties hereto, their successors and assigns, including without limitation any water users'

5  organization or similar group which may succeed either by assignment or by operation of law to

6  the rights of the United States hereunder."  The court concluded that "[t]his language clearly

7  evinces the intent of the parties to limit intended beneficiaries to the contracting parties."  *Id.*

8  While the court conceded that the contract "operate[d] to the [third parties'] benefit . . . and was

9  undoubtedly entered into with [them] in mind," it nonetheless determined, on the basis of the

10  above-quoted language, that the parties to the contract did not intend to extend its benefit to those

11  third parties.  *Id.*; *cf. also Commercial Ins. Co. of Newark v. Pacific-Peru Constr. Corp.*, 558 F.2d

12  948, 953-54 (9th Cir. 1977) (where contract provided that "this instrument shall inure to the

13  benefit of any such reinsurer," reinsurer was intended beneficiary of contract).

14      In including substantially similar language in the SPA, BANA and the Treasury likewise

15  evinced their intent to limit the intended beneficiaries of the SPA to the contracting parties.  *See*

16  *Escobedo*, 2009 WL 4981618, at *2 (taking note of similar SPA language as evidence that parties

17  intended to limit benefit of contract).  As in *Klamath*, that the SPA may operate to the benefit of

18  borrowers, and may even have been entered into with them in mind, cannot overcome the parties'

19  straightforward expression of their intent to limit the benefit of the SPA.  *See Hoffman*, 2010 WL

20  2635773, *3-5 ("Even though the agreement was made with the benefit of qualified borrowers in

21  mind, the language of the agreement itself does not grant them enforceable rights. Plaintiff

22  repeatedly restates HAMP's intention to minimize and prevent foreclosures, but showing that the

23  contract operates to the third parties' benefit and was entered into with them in mind is insufficient

24  to demonstrate that the contract was made with the clear intention to grant them enforceable

25  rights." (internal quotation marks and citation omitted)).

26      That the SPA was not intended to benefit third parties such as Plaintiffs is equally evident

27  from other provisions.  Section 7 of the SPA contemplates that disputes as to the performance of

28  the SPA may arise, and provides a mechanism for their resolution – but by "Fannie Mae and

9

Servicer" (i.e., BANA) only.  Compl., Exh. 1, at 7 (§ 7); *cf. Marks*, 2010 WL 2572988, at *4 ("Permitting these individual claims would undermine Freddie Mac's role as the compliance officer for the HAMP.").  Further, the SPA only permits legal action to be taken after the parties have taken "all reasonable steps to resolve disputes internally."  Compl., Exh. 1, at 7 (§ 7).  In light of this provision, permitting third-party suits to enforce the SPA would lead to the anomalous result that the actual parties to the agreement would be required to attempt to resolve disputes amicably out of court before filing suit, whereas third parties would face no such obstacle.

Moreover, the sheer number of borrowers who could bring suit against the Treasury, Bank of America, or other servicers were SPAs enforceable by borrowers lends further support to the conclusion that the SPA was not intended to inure to the benefit of borrowers like Plaintiffs.  *See Santa Clara*, 588 F.3d at 1248 ("The breadth and indefiniteness of a class of beneficiaries is entitled to some weight in negating the inference of intended beneficiary status.").  As the court in *Villa* noted, "the HAMP legislation was enacted with the hopes of helping 3 to 4 million homeowners avoid foreclosure."  2010 WL 935680, at *3 n.1; s*ee also* Compl., Exh. 2 at 1 (HAMP Supplemental Directive 09-01).  To date, Treasury has entered into SPAs with over 100 mortgage loan servicers, including some of the largest servicers in the country.  *See* Contracts – Making Home Affordable Program, *at* http://www.financialstability.gov/impact/contracts_list.htm (last visited July 21, 2010).  Plaintiffs themselves assert that Bank of America has over 1,000,000 HAMP-eligible loans in its servicing portfolio.  Compl. ¶ 52.  If Plaintiffs' theory were accepted, the number of borrowers who would be intended beneficiaries with standing to sue under these SPAs would number in the millions – encompassing every borrower who has a loan serviced by one of the more than 100 entities with SPAs.  This is far from a "narrow, well-defined class," *Santa Clara*, 588 F.3d at 1248, and Plaintiffs cannot have standing to sue under the SPA.[6]

---

[6] In addition, given the enormous number of borrowers covered by any given SPA, a servicer's voluntary participation in HAMP – which is strongly encouraged by the Treasury – would be *dis*couraged if the servicer were exposed to multiple private causes of action and damages for failing to comply with HAMP requirements. *Cf. Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293, 299 (2d Cir. 1998) (rejecting Plaintiffs' theory that they were third-party beneficiaries of contracts between landlords and housing authority in party because this "might severely discourage landlord participation in the Section 8 program by creating an open-ended liability for landlord-participants").

Because Plaintiffs are incidental beneficiaries of the SPA, they do not have enforceable rights under it.  To the extent their claims rely upon that agreement, they must be dismissed.[7]

**B.     *Plaintiff Britta Brewer Is Not Entitled To Relief.***

    1.     Brewer's Alleged Oral Agreement Is Unenforceable.

In addition to relying upon BANA's SPA with the Treasury, Plaintiff Britta Brewer seeks to premise her claims upon an alleged oral agreement with Defendants to modify the terms of her loan.  According to Brewer, a representative of Defendants told her that she had been approved for a temporary modification of her mortgage loan, and that if she submitted monthly trial payments she would be eligible for a permanent modification under HAMP.  Compl. ¶ 69.  She now seeks to enforce that supposed agreement against Defendants, claiming that she is entitled to a permanent modification.

Brewer's claims must fail on multiple levels.  First, the explicit terms of Brewer's deed of trust require that her lender assent, in writing, to any release of her obligations.  *See* Knights Decl., Exh. A, at 9 (¶ 13) ("Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing.").  Brewer's attempt to rely upon the supposed oral agreement to vary the terms of her deed of trust to her benefit is contrary to the explicit language of her deed of trust and must be rejected.

Second, Brewer's reliance upon the oral agreement is barred by the statute of frauds.  As the court explained in *Justo v. Indymac Bancorp*, No. SACV 09-1116 JVS, 2010 WL 623715, *7 (C.D. Cal. Feb. 19, 2010) (citing Cal. Civ. Code §§ 1698, 2922), because mortgages and deeds of trust come within the statute of frauds, "a modification of a mortgage is subject to the statute of frauds."  Accordingly, Brewer may not bring suit for breach of contract or breach of the covenant of good faith and fair dealing based upon Defendants' alleged oral agreement to modify her loan.

---

[7] Because none of the Plaintiffs have enforceable rights under the SPA, Defendants' motion seeks to dismiss the claims of all Plaintiffs, including Tarry and Nancy Miller, to the extent they rely upon that agreement.  Though Defendants categorically deny that any breach of the Millers' own permanent modification agreement occurred (and, in fact, the Millers' permanent modification has been fully implemented), based upon the allegations contained in the Complaint, Defendants do not move to dismiss the Millers' other claims at this time.

1    *See id.*; *see also Secrest v. Security Nat'l Mortg. Loan Trust 2002-2*, 167 Cal. App. 4th 544, 84

2    Cal. Rptr. 3d 275 (2008).

3            2.        Brewer Has Suffered No Cognizable Damages.

4            While Brewer also brings a claim for promissory estoppel, "[a] party asserting estoppel

5    must prove detrimental reliance and unconscionable injury in order to avoid the bar of the statute

6    of frauds." *Siam Numhong Products Co., Ltd. v. Eastimpex*, 866 F.Supp. 445, 448 (N.D. Cal.

7    1994) (citation and internal quotation marks omitted).  "Unconscionable injury results from

8    denying enforcement of a contract after one party is induced by another party to seriously change

9    position relying upon the oral agreement." *Id.* (citation and internal quotation marks omitted).

10   Brewer can show neither detrimental reliance nor unconscionable injury:  the Complaint identifies

11   no detriment or serious change in her position as a result of Defendants' alleged refusal to

12   permanently modify her loan.  Rather, she was permitted to remain in her home for months while

13   making mortgage payments of only $1,977 – less than *half* of the $4,164.36 that she was obliged

14   to pay under the terms of her loan.  Brewer cannot seriously contend that a reduction of over

15   $2,000.00 in her monthly obligations caused her detriment or "unconscionable injury,' and her

16   claim for promissory estoppel must therefore fail.

17   **C.      Plaintiff Stacey Madamba Is Not Entitled to Relief.**

18           1.        The Conditions Precedent to Madamba's Agreement Were Not Satisfied.

19           Unlike Brewer, Plaintiff Stacey Madamba seeks to premise her claims upon a written

20   Terms and Conditions Agreement ("TCA") that she allegedly entered into with Defendants to

21   modify her loan.  Contrary to Madamba's arguments, though, the TCA did not automatically

22   oblige Defendants to modify Madamba's loan, even if Madamba made regular payments under the

23   TCA.  This much is clear from the TCA itself, which provides a list of "Contingencies" upon

24   which Madamba's eligibility for a final modification hinged, including appropriate title insurance,

25   subordination agreements, approval by the mortgage insurer and a number of other contingencies

26   (including but not limited to deterioration in the condition of the property, lawsuits, liens,

27   additional expenses, and defaulted amounts) which may be a basis to deny the modification.

28   Compl., Exh. 9 at 2-3.  These "Contingencies" establish conditions precedent to Defendants'

12

obligation to modify Madamba's loan under the TCA.  To recover for a breach of the TCA, Madamba must plead that all conditions precedent have been satisfied.  *See Smith v. Simmons*, No. 1:05-CV-01187, 2007 WL 2815033, *3 (E.D. Cal. Sept. 25, 2007); *Northwest Pipe Co. v. Travelers Indem. Co. of Conn.*, No. C-02-04189JF, 2003 WL 24027882, *3 (N.D. Cal. Feb. 12, 2003).  The Complaint, however, omits any allegation that these conditions precedent were satisfied,[8] and Madamba's claims under Count I of the Complaint must accordingly fail.

In the absence of any allegation that the conditions precedent were satisfied, Madamba's claims for promissory estoppel must also fail.  Madamba could not reasonably rely upon the alleged promise to modify her loan when the contingencies that had to occur before the loan could be modified were not met.  *See Union Pacific R. Co. v. Cedar Rapids and Iowa City R. Co.*, 477 F. Supp. 2d 980, 1001-02 (N.D. Iowa 2007) ("[A] 'promissory estoppel' theory cannot be used to escape conditions precedent stated in an express agreement . . . .").[9]

2.      Madamba Has Suffered No Cognizable Damages.

Even if she had sufficiently pleaded satisfaction of all the conditions precedent contained within the TCA, Madamba, like Brewer, has failed to plead any damages cognizable under the claims she has asserted.  Damages are a necessary element of each of those causes of action.  *See Borrego v. BMG U.S. Latin*, 92 Fed. Appx. 572, 572-73 (9th Cir. 2004) (damages an element of breach of the covenant of good faith and fair dealing); *Advanced Choices, Inc. v. Department of Health Services*, 182 Cal. App. 4th 1661, 1672, 107 Cal. Rptr. 3d 470, 479 (2010) (injury to party asserting estoppel an element of promissory estoppel); *Express, LLC*, 464 F. Supp. 2d at 979 (damages an element of cause of action under Cal. Bus. & Prof. Code § 17200); *Bhari Information Tech. Sys. Pvt., Ltd. v. Allied Boston Bank Inc.*, No. C 05-01223 SI, 2005 WL 3481473, *4 (N.D. Cal. Dec. 20, 2005) ("damages to plaintiff caused by the breach" an element of breach of contract

---

[8] Although the Complaint alleges that Madamba "compli[ed] with all of Bank of America's instructions, and all responsibilities under the terms of the HAMP program directives," it fails to mention the conditions that are actually contained within the TCA itself.  *See* Compl. ¶ 92.

[9] Nor can Madamba state a 17200 claim, as it cannot constitute an unfair or deceptive act for a defendant to require that the agreed-upon conditions precedent contained within a written agreement be satisfied before it tenders its performance.

claim under California law).  Like Brewer, Madamba actually benefitted from Defendants' alleged

conduct: her monthly payment obligations were reduced nearly *$1,000.00* from $2,517.18 to

$1,591.23 per month.  For her part, Madamba gave up nothing to receive this benefit.

Madamba's allegations of harm suffered as a result of the supposed breach are equally

without merit.  Her bald assertion that the alleged breach has caused her to "forego other remedies

that might be pursued to save [her home], such as restructuring [her] debt under the bankruptcy

code, or pursuing other strategies to deal with [her] default, such as selling [her] home," Compl.

¶ 142, is incorrect on its face.  Nothing currently prevents Madamba from declaring bankruptcy or

putting her home on the market.  She could have done so yesterday, she could still do so today,

and she will be able to do so tomorrow.  And any other "remedies" or "strategies" that Madamba

may have foregone as a result of Defendants' conduct are not pleaded with enough particularity to

satisfy the requirement of *Twombly* that the factual allegations in the Complaint "must be enough

to raise a right to relief above the speculative level," 550 U.S. at 554-55, and her claims must be

dismissed.

### D.      Brewer's and Madamba's Section 17200 Claims Must Be Dismissed.

Standing to pursue an unfair competition claim under Cal. Bus. & Prof. Code § 17200  is

limited to any person who "has suffered injury in fact and has lost money or property as a result of

such unfair competition."  *Peterson v. Cellco Partnership*, 164 Cal. App. 4th 1583, 1590 (2008);

Cal. Bus. & Prof. Code § 17204.  Under this requirement, "[a] private plaintiff must make a

twofold showing: he or she must demonstrate injury in fact and a loss of money or property caused

by unfair competition."  *Peterson*, 164 Cal. App. 4th at 1590; Cal. Bus. & Prof. Code § 17204.

Plaintiffs Brewer and Madamba can show neither.  Although they claim to have lost money or

property as a result of Defendants' conduct, the factual allegations of the complaint confirm that

neither has lost money or property as a result of the alleged conduct.  *See supra* at sections B(2);

C(2).   Instead, both benefitted, and to continue to benefit, from Defendants' conduct by making

loan payments that are substantially lower than their required monthly payments.  Complaint

¶¶ 57, 60, 67, 73.  For these reasons, they cannot state a claim under Section 17200.  *Express, LLC

v. Fetish Group, Inc.*, 464 F. Supp. 2d 965, 979 (C.D. Cal. 2006) ("Damages or harm are an

14

1   element of all three types of prohibited business practices [under § 17200]" and failure to establish

2   them entitles a defendant to judgment as a matter of law.).

3          Moreover, Plaintiffs have not alleged facts sufficient to show that Defendants' conduct was

4   unfair or fraudulent.[10]  *See Berryman v. Merit Property Management, Inc.*, 152 Cal. App. 4th

5   1544, 1554 (2007) (elements of Section 17200 claim).  Their complaint is based on the theory that

6   plaintiffs are third party beneficiaries of the SPA, but as discussed above, ten Federal District

7   Courts have already rejected this theory.  Plaintiffs "cannot plead around an absolute bar to relief

8   simply by recasting the claim as one for unfair competition."  *Chabner v. United of Omaha Life*

9   *Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000).  Plaintiffs attempt to salvage their Section 17200

10  claim by alleging that Defendants' conduct "violates established public policy" or that the alleged

11  "harm . . . greatly outweighs any benefits."  Complaint ¶¶ 122.  These vague and conclusory

12  allegations, which merely recite the elements of a claim under Section 17200, fail to state a

13  plausible claim.  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1950 (2009).

14                                    **CONCLUSION**

15          For the foregoing reasons, Defendants respectfully request that the Court dismiss the

16  breach of contract claims of all Plaintiffs to the extent they are premised on an alleged breach of

17  the Servicer Participation Agreement, and all other claims of Plaintiffs Britta Brewer and Stacey

18  Madamba, for failure to state a claim upon which relief can be granted.

19  Dated:  July 30, 2010                          Respectfully submitted,

20                                                 Bank of America, N.A. and BAC Home Loans
                                                   Servicing, L.P.
21

22                                                 By their attorneys,

23                                                 /s/ Mark Tyler Knights
                                                   Brooks R. Brown
24                                                 bbrown@goodwinprocter.com
                                                   GOODWIN PROCTER LLP
25                                                 10250 Constellation Boulevard
                                                   21st Floor
26                                                 Los Angeles, CA 90067-6221
                                                   Tel.:  310.788.5100
27
_____
28  [10] Plaintiffs do not allege that Defendants have engaged in "unlawful" conduct under Section
    17200.  *See* Complaint ¶¶ 152-153.

DEFENDANTS' MOTION TO DISMISS CLASS ACTION COMPLAINT
Case No. 3:10-CV-01884-JSW

1

Fax:  310.286.0992

2

James W. McGarry (*pro hac vice*)
jmcgarry@goodwinprocter.com
Mark Tyler Knights (*pro hac vice*)
mknights@goodwinprocter.com
GOODWIN PROCTER LLP
53 State Street
Boston, Massachusetts  02109
Tel.:  617.570.1000
Fax:  617.523.1231

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

16

1
2

**<u>PROOF OF SERVICE</u>**

3

4

I further certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on this 30TH day of July, 2010.

5
6
7

/s/ Mark Tyler Knights
Mark Tyler Knights

8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28